UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICHOLAS CRISCUOLO,<br><br>                     Plaintiff,<br><br>     v.<br><br>GRANT COUNTY, et al.,<br><br>                   Defendants. | NO: 10-CV-0470-TOR<br><br>ORDER RE MOTIONS FOR<br>SUMMARY JUDGMENT AND<br>MOTION TO STRIKE |

BEFORE THE COURT are Plaintiff's Motion for Partial Summary Judgment on Affirmative Defense RCW 4.24.410 (ECF No. 105); Plaintiff's Motion for Partial Summary Judgment on Affirmative Defense RCW 16.08.030 (ECF No. 106); Defendants Grant County and Lamens' Second Summary Judgment Motion Regarding State Claims (ECF No. 107); and Plaintiff's Motion to Strike (ECF No. 121). This matter was heard with oral argument on January 23, 2014. Adam P. Karp appeared on behalf of the Plaintiff. Patrick R. Moberg

ORDER RE MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO
STRIKE ~ 1

1  appeared on behalf of Defendant. The Court has reviewed the briefing and the

2  record and files herein, and is fully informed.

3                                   BACKGROUND

4         This case concerns the shooting of Plaintiff's dog by a Grant County

5  Sheriff's Deputy. In the motion now before the Court, Defendants move for

6  summary judgment on Plaintiff's state law claims; Plaintiff moves for summary

7  judgment on Defendants' state law affirmative defenses.

8                                    FACTS[1]

9         On January 24, 2010, Grant County Deputy Sheriff Beau Lamens shot and

10 killed Slyder, a dog belonging to Plaintiff Nicholas Criscuolo. The shooting

11 occurred at Neppel Landing Park in Moses Lake, Washington, located within

12 Moses Lake city limits and open to the public. Deputy Lamens was in the park

13 with his police dog, Maddox, assisting with the arrest of an individual for

14 possession of methamphetamine. Maddox, weighing about 60 pounds, is a drug

15 detection dog.

16

17 [1] At the Court's request, the parties did not resubmit their statements of material

18 fact which were previously filed before the appeal.  The Court has reviewed those

19 statements of fact, the statement of facts included in Judge Suko's order, and the

20 Ninth Circuit's statement of facts on appeal.

Slyder, weighing about 110 pounds, was unleashed in the park by the Plaintiff, his owner. Slyder made contact with Maddox, and Deputy Lamens kicked Slyder to separate him from Maddox. During the interaction, Maddox slipped out of his collar. After kicking Slyder, Deputy Lamens shot and killed Slyder. Plaintiff and witnesses testified that Slyder was running toward Plaintiff—and away from Deputy Lamens—when Deputy Lamens shot the dog. Plaintiff testified that the dog was very close to him, one to two feet away, and Plaintiff was reaching for his dog's collar when Deputy Lamens fired the three shots that killed Slyder.

Plaintiff sued Deputy Lamens and Grant County, alleging claims under 42 U.S.C. § 1983 and pendent state claims. Upon the parties' motions for summary judgment, Judge Suko found that Deputy Lamens' killing of Slyder was objectively reasonable under the Fourth Amendment, and alternatively found that Deputy Lamens was entitled to qualified immunity, and dismissed Plaintiff's claims against Deputy Lamens. Likewise, the district court held that, because Deputy Lamens did not unreasonably seize Slyder in violation of the Fourth Amendment there was no violation for which Grant County could be held liable. In light of its dismissal of the claims under federal law, the trial court declined to exercise its supplemental jurisdiction over the pendent state claims.

Upon Plaintiff's appeal, the Ninth Circuit reversed the district court's finding that the Deputy Lamens' killing of Slyder was objectively reasonable and that he was entitled to qualified immunity for his actions. The Ninth Circuit held that

> [a] reasonable trier of fact could find that Deputy Lamens unreasonably shot Slyder after the dogs separated, because Slyder posed no imminent threat to Maddox even though the events occurred rapidly. Criscuolo and other witnesses claim that right before Deputy Lamens fired, Slyder was not springing toward Maddox, Slyder was stationary or retreating at a distance of 10-20 feet from Deputy Lamens and Maddox, and Criscuolo was one to two feet away and about to leash Slyder.

> Such facts, if credited, strengthen Criscuolo's Fourth Amendment interests, and a reasonable jury could conclude that Deputy Lamens did not need to make any "split-second decision" to protect Maddox.

*Criscuolo v. Grant County*, --- Fed. Appx. ---, 2013 WL 4017412 (9th Cir. 2013).

The Ninth Circuit affirmed the district court's dismissal of the claims against Grant County which were based on policy, inaction, and failure to train. Based on its reversal of the claims against Deputy Lamens, however, the court reinstated Plaintiff's pendent state law claims. Plaintiff's Second Amended Complaint lists the remaining seven pendent state law claims as: Malicious Injury to a Pet; Intentional and/or Reckless Infliction of Emotional Distress; Negligence (relative to killing of Slyder); Negligence (relative to physical invasion of Criscuolo); Assault (as to Criscuolo); Ordinary and/or Willful Conversion and/or Trespass to

Chattels; and Gross Negligence, Willful Misconduct, and/or Reckless Property Damage/Destruction. ECF No. 23 at 18.

In the motions now before the Court on remand, Defendant moves for summary judgment on Plaintiff's pendent state law claims, and Plaintiff moves for summary judgment on Defendant's affirmative defenses under state law.

DISCUSSION

**A. Legal Standard**

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could

find in favor of the non-moving party.  *Id.*  In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Only evidence which would be admissible at trial may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

### B. Motion for Summary Judgment on Defendants' Affirmative Defenses

#### 1. Affirmative Defense Based on RCW 4.24.410

As a threshold matter, the Court must determine whether RCW § 4.24.410 confers immunity on Defendants, as they allege. Defendants have moved for summary judgment on this issue. ECF No. 107.  Plaintiff likewise moves for summary judgment on Defendants' affirmative defense under the statute, arguing that the statute is inapplicable to Deputy Lamens because Deputy Lamens was not "using" his K-9 Maddox within the meaning of the statute, and because Slyder's death did not occur as a result of Deputy Lamens' "use" of Maddox. ECF No. 105. Plaintiff also argues that the state statute cannot immunize federal claims. *Id*.

With respect to the immunization against federal claims, the Court agrees with Plaintiff. "Immunity under § 1983 is governed by federal law; state law cannot provide immunity from suit for federal civil rights violations." *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 2000). Accordingly, any immunity conferred by state statute does not apply to Plaintiff's § 1983 claims reinstated by

the Ninth Circuit. The Court, then, examines immunity under the statute only with respect to Plaintiff's state law claims.

The statute in question provides in relevant part that "[a]ny dog handler who uses a police dog in the line of duty in good faith is immune from civil action for damages arising out of such use of the police dog or accelerant detection dog." RCW 4.24.410.

Plaintiff contends that Deputy Lamens was not "using" his police dog within the meaning of the statute when he killed Slyder, and thus the statutory immunity should not apply to his actions in this case. ECF No. 105 at 5. Defendant argues that the statute's language "arising out of such use of the police dog" should be interpreted in accordance with the same language in statutes involving insurance cases to mean "originating from," "growing out of," or "flowing from." ECF No. 108 at 6. Thus, Defendant argues, because he was using his police dog and Slyder interacted with Maddox, the statutory immunity applies to his conduct.

The Court looks to the language of the statute, as no relevant case law sheds light on the parties' dispute over the statute's meaning. At issue in this instance is the interpretation of the word "use." As the United States Supreme Court has stated with respect to the word "use" in the context of 18 U.S.C. 924(c),

> the word "use" poses some interpretational difficulties because of the different meanings attributable to it. Consider the paradoxical statement: "I *use* a gun to protect my house, but I've never had to *use* it." "Use" draws meaning from its context, and we will look not only to the word itself, but

also to the statute and the sentencing scheme, to determine the meaning Congress intended.

*Bailey v. United States*, 516 U.S. 137, 143 (1995), superseded by statute as stated in *Abbott v. U.S.*, 131 S.Ct. 18 (2010). Though Congress amended 18 U.S.C. § 924(c) in 1998 to clarify the meaning of "use" in the context of that statute, the Supreme Court's general examination of the statutory meaning of "use" is instructive. In *Bailey*, which consolidated two cases, two defendants were convicted of "using" a firearm in the commission of a crime in violation of § 924(c). In one defendant's case, police officers found cocaine between the seat and front console of the defendant's car, while a search of the trunk revealed a gun. The court explained that the trier of fact could reasonably infer that the defendant had used the gun in the trunk to protect his drugs and drug proceeds. In the other defendant's case, after police observed her go into her apartment to retrieve drugs, they executed a search warrant, which revealed drugs and an unloaded weapon in a locked trunk in her bedroom closet. An expert testified that drug dealers generally use guns to protect themselves from other dealers and the police. The statute at the time required the imposition of mandatory minimum penalties if the defendant "during and in relation to any crime of violence or drug trafficking crime…uses or carries a firearm." 924(c)(1). The Supreme Court held that the statute "requires evidence sufficient to show an active employment of the firearm by the defendant,

a use that makes the firearm an operative factor in relation to the predicate

offense." *Bailey*, 516 U.S. at 143.  As the Supreme Court elaborated,

> The word "use" in the statute must be given its "ordinary or natural" meaning, a meaning variously defined as "[t]o convert to one's service," "to employ," "to avail oneself of," and "to carry out a purpose or action by means of." These various definitions of "use" imply action and implementation.

*Bailey*, 516 U.S. at 145 (internal citations omitted). The Court explained further:

> Where the Court of Appeals erred was not in its conclusion that "use" means more than mere possession, but in its standard for evaluating whether the involvement of a firearm amounted to something more than mere possession. Its proximity and accessibility standard provides almost no limitation on the kind of possession that would be criminalized; in practice, nearly every possession of a firearm by a person engaged in drug trafficking would satisfy the standard, "thereby eras[ing] the line that the statutes, and the courts, have tried to draw."  Rather than requiring actual use, the District of Columbia Circuit would criminalize "simpl[e] possession with a floating intent to use."

*Bailey*, 516 U.S. at 143-44 (internal citations omitted). The Supreme Court's

interpretation of the word "use" in a federal statute is both persuasive and

instructive as to how the word should be interpreted in this state statute.

Here, Maddox was not an "operative factor" nor was the police dog

"actively employed" in the resulting injury to Slyder. Deputy Lamens' independent

use of the gun, as Plaintiff argues, was the direct cause of Slyder's death. Though

Defendants argue that Deputy Lamens would not have had to shoot Slyder but for

Maddox's presence, the word "use" requires more than "but-for" causation because

"use" requires "action and implementation," according to the Supreme Court. The parties' dispute whether Deputy Lamens was "pre-stimulating" Maddox for use in detecting drugs when the shooting occurred, but ultimately this inquiry is irrelevant to whether the injury to Slyder arose from "such use" as the statute requires.

Nor are the cases Defendants cite in support of their argument that Deputy Lamens' shooting of Slyder arose from his "use of the police dog" persuasive, as they all involve incidents in which the *police dog* inflicted the injuries at issue. *See Peterson v. City of Federal Way*, 2007 WL 2110336 (W.D. Wash. 2007) (police dog bit plaintiff); *Lockrem v. United States*, 2011 WL 3501693 (W. D. Wash. 2011) (police dog bit arrestee's brother). These cases support the Court's narrower interpretation of the word "use."

Here, the fact that Maddox was standing by and had recently interacted with Slyder does not mean that Deputy Lamens' shooting of Slyder arose out of his good faith "use" of Maddox. Defendants' broad interpretation of the statute would immunize police dog handlers from liability whenever they were using a police dog, something the state legislature most certainly did not intend by using the restrictive, limiting words at issue. It would be another matter if Maddox had injured or killed Slyder. Then such damage could be considered to "aris[e] out of such use of the police dog." But here, Deputy Lamens used his firearm to ostensibly protect Maddox. The injury and death of Slyder resulting from Deputy

Lamen's use of a firearm did not "aris[e] out of such use of the police dog." Accordingly, the Court finds that RCW 4.24.410 does not confer statutory immunity for Defendants' state law claims under these facts, and therefore grants Plaintiff's motion for summary judgment.

2. <u>Affirmative Defense Based on RCW 16.08.030 (ECF No. 106)</u>

Defendants' First Amended Answer sets forth the affirmative defenses of privilege and immunity. ECF No. 32 at 16-17. In Defendant Deputy Lamens' first motion for summary judgment before Judge Suko, he contended that police officers have common law qualified immunity from state tort claims if they are carrying out a statutory duty, according to the procedures dictated by statute and superiors and they are acting reasonably, citing RCW 16.08.030. ECF No. 43 at 17. Plaintiff now moves for summary judgment on Defendants' affirmative defense based on RCW 16.08.030. Plaintiff argues that the legislative history of the statute demonstrates its inapplicability to the instant facts; that Slyder was in fact wearing an identification tag within the meaning of the statute; and that the statute may not immunize federal claims.

Washington law provides that

It shall be the duty of any person owning or keeping any dog or dogs which shall be found killing any domestic animal to kill such dog or dogs within forty-eight hours after being notified of that fact, and any person failing or neglecting to comply with the provisions of this section shall be deemed guilty of a misdemeanor, and it *shall be the duty of the sheriff or any deputy sheriff to kill any dog found* running *at large (after the first day of August of*

ORDER RE MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO STRIKE ~ 11

*any year and before the first day of March in the following year) without a metal identification tag.*

RCW § 16.08.030 (emphasis added).

Plaintiff contends that the statute does not apply to a sheriff's deputy acting within the city limits, because there is a city ordinance governing the licensing of pets and the penalty imposed for not wearing a metal tag in the city limits is a civil penalty, not "a directive to police officers (much less sheriff deputies) to enter city limits and kill unlicensed dogs running at large." ECF No. 105 at 3. Plaintiff cites the legislative history of the statute in support of his argument. Plaintiff further argues that the statute does not define "metal identification tag," but contends that the dog was in fact wearing two tags: a rabies tag prompting readers to contact the veterinary clinic, and a microchip tag stating that Slyder had an implanted microchip. *Id.* at 8-9. Defendant maintains that the statute is unambiguous and should be interpreted without reference to its legislative history. ECF No. 108 at 12.

The Court first considers whether the statute, on its face, applies to the instant facts. Three questions form the crux of the inquiry: whether Deputy Lamens was in fact relying on the statute when he shot Slyder, whether Slyder was "running at large," and whether Slyder was "without a metal identification tag" under the meaning of the statute.

The record supplies no evidence that Deputy Lamens in any way relied on RCW 16.08.030 and determined that Slyder was running at large when he shot Slyder. Moreover, the record supplies no evidence that Deputy Lamens looked at the tags Slyder was wearing to determine if they were in fact "metal identification tags." With respect to the second question, the Court notes that the statute does not state "unleashed" or "unfenced." The statute specifies "running at large." Words in statutes must be given their ordinary meaning. "At large" is defined variously as "free, unrestrained, not under control." Black's Law Dictionary (9th ed. 2009). In other words, the phrase suggests a broader context, and not one in which the owner is standing by, within sight. Rather, Plaintiff testified that he was running toward Deputy Lamens, saying that he would leash Slyder. Thus, the dog was not "free" and he was only seconds away from being completely restrained. Furthermore, Plaintiff stated that shortly before the incident, he had asked another Sheriff's deputy whether he could let his dog off leash, to which the deputy responded that he did not care. Slyder was not roaming unattended or "at large" within the meaning of the statute.

With respect to the third question, the statute states only that the tags must be for "identification" and "metal." The record is ambiguous as to the substance of the tags, but as Plaintiff points out, the statute does not specify that the tags be licensing tags. Slyder's tags served to identify the dog, in that an owner could be

identified by calling the number on the rabies tag or having the dog's microchip

scanned. Defendant argues that the "statute should not be interpreted to require

detective work for an animal that is clearly not identified when running at large."

ECF No. 108 at 12. While the Court acknowledges that sheriff deputies and police

officers often have to make difficult decisions at a moment's notice, there is no

suggestion that Deputy Lamens was aware of and enforcing the statute when he

shot Slyder, nor is there any indication that he made any attempt to see if Slyder's

identification tags were metal, in compliance with the statute. Accordingly, the

Court grants summary judgment to Plaintiff on this issue.

## C. Defendants' Motion for Summary Judgment on Plaintiff's State Law Claims (ECF No. 107)

Defendants move for summary judgment on Plaintiff's state law claims,

arguing that Deputy Lamens is entitled to statutory immunity under RCW

4.24.410; that there is no cause of action for malicious injury to a pet; that Plaintiff

dismissed his cause of action for reckless infliction of emotional distress; that the

negligence claims are barred by statute and the public duty doctrine; that negligent

infliction of emotional distress is unavailable for negligently injured pets; that there

is no evidence that Deputy Lamens assaulted Plaintiff; that Deputy Lamens'

"lawful justification" bars a conversion claim; that Plaintiff's loss of

use/companionship claim is barred; and that emotional distress damages are

unavailable. Having dispatched Defendant's claim of statutory immunity above, the Court examines each of Defendant's remaining arguments in turn.

### 1. Malicious Injury to a Pet

Defendant Lamens moves for summary judgment on Plaintiff's claim of malicious injury to a pet, arguing that recovery for malicious injury to a pet is a cause of action only recently created by a single court in *dicta* and in response to bad facts. Defendant argues that "[t]his court should not blindly adopt this dicta holding." ECF No. 107 at 7.

Contrary to Defendant's assertion, however, the Washington State Court of Appeals, Division III, articulated a cause of action for malicious injury to a pet not as *dicta*, as Defendant avers, but as the court's holding in *Womack v. Von Rardon*, 133 Wash. App. 254 (2006). The Ninth Circuit clearly stated

> [t]he seminal case of *Erie Railway Co. v. Tompkins*, 304 U.S. 64, 71–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), held that federal courts exercising diversity jurisdiction must apply as their rules of decision the substantive law of the states. Generally, state law is determined by statutes or by pronouncements from the state's highest court. *See West v. American Telegraph & Telephone Co.*, 311 U.S. 223, 236–37, 61 S.Ct. 179, 85 L.Ed. 139 (1940*); Vestar Dev. II, LLC v. General Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001). In cases where a state supreme court has not addressed the presented issue of state law, "a federal court is obligated to follow the decisions of the state's intermediate appellate courts" unless the court finds "convincing evidence that the state's supreme court likely would not follow [them]." *Ryman v. Sears, Roebuck and Co.*, 505 F.3d 993, 994 (9th Cir. 2007) (internal quotation marks and citations omitted).

1   *Jerry Beeman and Pharmacy Services, Inc. v. Anthem Prescription Management*,

2   *LLC,* 652 F.3d 1085, 1092 -93 (9th Cir. 2011). Consequently, as there is no

3   Washington Supreme Court precedent on point, the Court must apply the law as

4   articulated by the intermediate appellate court absent "convincing evidence" that

5   the state supreme court would disagree.

6       In *Womack*, the court first considered the availability of recovery under a

7   theory of malicious injury to a pet. Three boys took Ms. Womack's cat Max from

8   her porch, doused him with gasoline and set him on fire. *Womack*, 133 Wash. App.

9   at 257.  In the ensuing lawsuit, the trial court awarded Ms. Womack $5,000 in

10  general damages for emotional distress in a default judgment. *Id*. Ms. Womack

11  appealed, arguing that her damages were improperly measured. The appeals court

12  affirmed the lower court, but held that there was a remedy for malicious injury to a

13  pet. *Id*.  The court explained:

14          Division Two of this court affirmed a summary dismissal of a negligent
            infliction of emotional distress claim because the theory has not been
15          extended to pet injuries. *Pickford v. Masion*, 124 Wash.App. 257, 262–63,
            98 P.3d 1232 (2004). The *Pickford* court observed, "damages are
16          recoverable for the actual or intrinsic value of lost property but not for
            sentimental value." *Pickford*, 124 Wash.App. at 263, 98 P.3d 1232 (citing
17          *Mieske v. Bartell Drug Co*., 92 Wash.2d 40, 45–46, 593 P.2d 1308 (1979)).
            *See also Dillon v. O'Connor*, 68 Wash.2d 184, 186–87, 412 P.2d 126 (1966)
18          (negligence judgment reversed where jury was instructed to consider more
            than the "fair market value" of a dog run over by a car). Notably, the
19          *Pickford* court left open whether malicious injury to an animal may be the
            cause of emotional distress damages in Washington because their facts, like
20          the *Dillon* facts, raised solely negligent injury. *Pickford*, 124 Wash.App. at
            261, 98 P.3d 1232.

> *For the first time in Washington, we hold malicious injury to a pet can support a claim for, and be considered a factor in measuring a person's emotional distress damages.* The damages are consistent with actual and intrinsic value concepts as found in *Pickford* because, depending upon the particular case facts, harm may be caused to a person's emotional well-being by malicious injury to that person's pet as personal property. We do not interpret the trial court's final reference to value as limiting the measure of damages to pet fair market value. Thus, we reject Ms. Womack's contrary contention and supportive arguments. The trial court's award for emotional distress damages is akin to a general award for pain and suffering. The court is not required to explain its weighing process or segregate the particular factors it considers so long as the award is reasonably within the range of evidence. It is.
>
> In sum, the trial court properly considered the malicious harm to Max combined with Ms. Womack's distress over her son's harassment when deciding general emotional distress damages. Therefore, the trial court did not err in considering: "Value of Max and Bernadette Womack's emotional distress."

*Womack*, 133 Wash. App. at 263-64 (emphasis added). Thus, a cause of action for malicious injury to a pet is recognized in Washington, so long as the harm was malicious.

Defendant also argues that even if there is a cause of action for malicious injury to a pet, there is no evidence that Deputy Lamens acted with malice in shooting Slyder. Plaintiff counters that there exists a disputed issue of material fact as to whether Deputy Lamens acted with malice, citing the facts that Deputy Lamens (1) shot at Slyder three times, showing an intent to exterminate him; (2) did not use nonlethal force on Slyder; (3) did not rely on his training to break up

dog fights as he was trained to do; (4) jeopardized Plaintiff who was standing nearby; and (5) did not assess the need for (emergency) veterinary care. ECF No. 111 at 4. The Court agrees that these facts at least create a question of material fact such that summary judgment is precluded.

### 2. "Reckless" Infliction of Emotional Distress

Defendant moves for summary judgment on Plaintiff's claim of Reckless Infliction of Emotional Distress. Defendant argues that because the torts of outrage and intentional emotional distress are the same, by pleading the claim as intentional infliction of emotional distress and then dismissing the claim, Plaintiff abandoned the claim he now characterizes as "reckless." ECF No. 116 at 6-7.

The tort of outrage requires a plaintiff to prove (1) extreme or outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual emotional distress. *Id*. As Defendant argues, "outrage" and "intentional infliction of emotional distress" are typically "synonyms for the same tort." *Kloepfel v. Bokor,* 149 Wash. 2d 192, 194, fn. 1 (2003). However, outrage also encompasses reckless conduct. *Robel v. Roundup Corp*., 148 Wash.2d 35, 51 fn. 7 (2002).

The parties stipulated to the dismissal with prejudice of "Plaintiff's Fourth Claim (Intentional Infliction of Emotional Distress, but not Reckless Infliction of Emotional Distress) and Tenth Claim (stand-alone State Constitutional Violation cause of action)," which the Court accordingly granted (ECF No. 36). In other

words, the parties specifically agreed not to dismiss reckless infliction of emotional distress. The Court accordingly finds that the overall tort of outrage was not dismissed by the Court's order at ECF No. 36. Rather, pursuant to the parties' stipulation, the Court dismissed recovery under one theory (intentional infliction of emotional distress) of the second prong; the other theory (reckless infliction of emotional distress) survives.

3. <u>Negligence</u>

Plaintiff's Second Amended Complaint alleges two causes of action for negligence, one "relative to killing Slyder" and one "relative to physical invasion of Criscuolo." ECF No. 23 at 18. Defendant moves for summary judgment on both claims, arguing that they should be dismissed because Deputy Lamens has immunity under RCW 4.24.410; because Washington law gives pet owners no right to emotional distress damages based on negligent injury of a pet; and because Deputy Lamens owed no specific duty of care to Plaintiff under the public duty doctrine. The Court addresses availability of emotional distress damages at greater length below, and having already dispatched the immunity claims, here considers Defendant's contention that the public duty doctrine bars Plaintiff's claims related to the direct invasion of his personal security caused by Deputy Lamens' firing his gun close to Plaintiff. Plaintiff argues that his claim for negligent infliction of emotional distress arises from fear of his own injury and invasion of his personal

space based on his proximity to Slyder when Slyder was shot. ECF No. 111 at 7.

Thus, the Court turns to the question of whether the public duty doctrine precludes

Deputy Lamens from owing a duty to Plaintiff.

A threshold question when considering liability for negligence is whether

the defendant owes a duty of care to the plaintiff. *Cummins v. Lewis Cnty.*, 156

Wash. 2d 844, 852 (2006). In negligence actions against a government entity,

> to be actionable, the duty must be one owed to the injured plaintiff, and not one owed to the public in general. This basic principle of negligence law is expressed in the "public duty doctrine". Under the public duty doctrine, no liability may be imposed for a public official's negligent conduct unless it is shown that "the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.,* a duty to all is a duty to no one)."

*Taylor v. Stevens County,* 111 Wash.2d 159, 163 (1988) (citations omitted)

(quoting *J & B Dev. Co. v. King County,* 100 Wash.2d 299, 303 (1983)).

Washington courts have identified four circumstances under which a governmental

entity has a special duty of care owed to a particular plaintiff rather than the

general duty of care owed to the public at large, including:

> when the terms of a legislative enactment evidence an intent to identify and protect a particular and circumscribed class of persons (legislative intent); (2) where governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, fail to take corrective action despite a statutory duty to do so, and the plaintiff is within the class the statute intended to protect (failure to enforce); (3) when governmental agents fail to exercise reasonable care after assuming a duty to warn or come to the aid of a particular plaintiff (rescue doctrine); or (4) where a relationship exists between the governmental agent and any

ORDER RE MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO
STRIKE ~ 20

reasonably foreseeable plaintiff, setting the injured plaintiff off from the general public and the plaintiff relies on explicit assurances given by the agent or assurances inherent in a duty vested in a governmental entity (special relationship).

*Bailey v. Town of Forks*, 108 Wash. 2d 262, 268 (1987) *amended,* 753 P.2d 523 (1988) (internal citations omitted).

Defendants argue that the public duty doctrine precludes claims that Deputy Lamens was negligent because Deputy Lamens did not owe any specific duty to Plaintiff while conducting his drug search. ECF No. 107 at 13. The Court more properly frames the issue as to whether Deputy Lamens owed a duty to Plaintiff when he discharged his firearm three times in close proximity to Plaintiff. Plaintiff invokes the "legislative intent" exception to the public duty doctrine, arguing that RCW 9A.16.040 imposes restrictions on a peace officer's use of deadly force.

Under the legislative intent exception, the public duty doctrine's preclusion of liability

does not apply where the Legislature enacts legislation for the protection of persons of the plaintiff's class. In *Halvorson v. Dahl,* 89 Wash.2d 673, 676, 574 P.2d 1190 (1978) we stated that "[l]iability can be founded upon a municipal code if that code by its terms evidences a clear intent to identify and protect a particular and circumscribed class of persons."

*Taylor*, 111 Wash.2d at 164 (internal citations omitted). In *Taylor*, the court found that there was no "clear intent" to protect a specific class where the municipal code in question did not specifically focus on occupants, but rather provided general

minimum performance standards and requirements for building and construction

materials. *Id*. at 165.

The statute cited by Plaintiff, RCW 9A.16.040, specifies when deadly force

can be used to kill persons. It has no application to the discharge of a weapon to

kill a dog and does not create a duty to Plaintiff which would override the public

duty doctrine's shield from negligence based torts. *Jimenez v. City of Olympia*,

2010 WL 3061799, 15 (W.D.Wash. 2010) (the language of the statute does not

exhibit clear legislative intent to identify and protect a particular and circumscribed

class of persons).

Plaintiff's negligence based claims that Deputy Lamens was negligent in

discharging deadly force (his service weapon) in proximity to Plaintiff is dismissed

because the public duty doctrine shields Defendants from liability.

4. <u>Assault</u>

Defendant moves for summary judgment on Plaintiff's claim of assault,

arguing that because Deputy Lamens had no intent to cause Plaintiff any harm or

apprehension of harm, Plaintiff cannot establish an assault claim. ECF No. 107 at

14.

"An actor is subject to liability to another for assault if (a) he acts intending

to cause a harmful or offensive contact with the person of the other or a third

person, or an imminent apprehension of such a contact, and (b) the other is thereby

put in such imminent apprehension. *Brower v. Ackerley*, 88 Wash. App. 87, 93 (1997) (quoting with approval the Restatement (Second) of Torts § 21). "The gist of the cause of action [for assault] is 'the victim's apprehension of imminent physical violence caused by the perpetrator's action or threat.'" *Id.* at 92 (*quoting St. Michelle v. Robinson*, 52 Wash. App. 309, 313 (1988)).

Here, two theories for assault exist. [2] First, is the traditional type of assault in which Defendant intends to put Plaintiff in apprehension of harmful physical contact. Defendants contend that there is no question that Deputy Lamens did not intend to put Plaintiff in fear of imminent physical injury, and that as such no claim for assault can stand. But there is a question of fact as to whether Deputy Lamens pointed his weapon in Plaintiff's direction. If he did, there is also at least a genuine

---

[2] The Court finds unpersuasive Defendant's citation to *Kaiser v. United States*, 761 F. Supp. 150, 155 (D.D.C. 1991), for the proposition that a bystander cannot claim assault for the shooting of an animal; while based on similar facts, the shooter in that case "did not even see plaintiffs at the time he aimed and fired his weapon," nor did plaintiffs directly see defendant pointing his gun in their direction. Here, there is no indication that Deputy Lamens did not see Plaintiff or that Plaintiff did not see Deputy Lamens point and fire his gun at Slyder, perhaps one to two feet away.

question of fact as to whether Deputy Lamens intended to create such an apprehension of imminent harm because Deputy Lamens knew or should have known that pointing a weapon at someone could create apprehension of imminent harm. Accordingly, because there is a question of fact as to whether the gun was pointed at Plaintiff (or within one or two feet of him) when Deputy Lamens shot Slyder three times, this issue is inappropriate for summary judgment.

Second, Plaintiff argues that the doctrine of transferred intent applies here, citing a series of criminal cases in support of this proposition. ECF No. 111 at 8-10. Under the doctrine of transferred intent, intent to harm one person can be transferred to another person if it placed them in apprehension of a harmful or offensive contact. *See* Restatement (Second) of Torts §32 (1965). ("If an act is done with the intention of affecting a third person…but puts another in apprehension of a harmful or offensive contact, the actor is subject to liability to such other as fully as though he intended so to affect him."). Plaintiff contends that because Deputy "Lamens undisputedly intended to make lethal contact with Slyder using deadly force," the fact that Plaintiff was put in "apprehension of fear of bodily injury" gives rise to a claim of assault. The Court can find no case law or analysis supporting a theory of transferred intent from a dog to a human, and declines to extend this theory here.

///

### 5. <u>Conversion of Chattels and Destruction of Property</u>

Defendant moves for summary judgment on Plaintiff's claim of conversion of chattels and destruction to property. Defendant argues that conversion involves willful interference with a chattel without lawful justification; because Deputy Lamens was following Grant County Sheriff's Office policy when he shot Slyder, he had "lawful justification" for his actions, and thus Plaintiff cannot recover.

"The tort of conversion is 'the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.'" *Consulting* Overseas *Mgmt., Ltd. v. Shtikel*, 105 Wash. App. 80, 83 (2001) (quoting *Washington St. Bank v. Medalia Healthcare*, L.L.C., 96 Wash. App. 547, 554 (1999)).

Here, Defendant contends that Deputy Lamens had "lawful justification" when he shot Slyder under the Grant County Sheriff's Office policy, which specifically provided that it was within a deputy's discretion to kill animals who are vicious or attacking. ECF No. 107 at 15. *See also Criscuolo v. Grant County*, --- Fed. Appx. ---, 2013 WL 4017412 (9th Cir. 2013) ("Grant County Sheriff's Office Policy 7.14 provides that animals 'who are vicious and/or attacking persons or property may be killed at the discretion of the deputy.'"). Plaintiff contends that because the Ninth Circuit held that the policy was not the moving force behind Deputy Lamens' decision to kill Slyder, it is a question of fact for the jury as to

whether Deputy Lamens' killing of Slyder was lawful. ECF No. 111 at 11 (citing Criscuolo, 2013 WL 4017412 ("The [Grant County] policy's "attacking persons and or property" language, at issue here, does not authorize unconstitutional conduct or give officers unbridled discretion to shoot any animal they encounter, even if it is not threatening. No reasonable jury could find that Deputy Lamens' actions 'reflected [the] implementation of a generally applicable rule….'")). This Court agrees. Defendants' motion for summary judgment on this claim is denied.

### 6. Damages

The parties' biggest dispute concerns what damages, if any, Plaintiff can recover on any of the theories of liability at issue in this case. Plaintiff's complaint prays for, among other things, "economic damages, representing the intrinsic value and loss of use of Slyder"; "special and general damages relating to loss of Slyder's utility"; "noneconomic damages, including emotional distress and loss of enjoyment of life"; "future medical expenses pertaining to Criscuolo's treatment for emotional distress"; and punitive damages. As a mixed-breed dog that Plaintiff obtained for little or no money, much of Slyder's value was as a pet and companion to Plaintiff, and much of the damage to Plaintiff was emotional, stemming from the loss of his longtime canine companion. Defendants contend that damages for Slyder's death, if any, should be limited to Slyder's market or replacement value.

There are three common-law tort bases for recovery of emotional distress damages left in this case: compensatory damages for injury suffered as a result of traditional intentional torts, here conversion and assault; damages suffered from Deputy Lamens' reckless infliction of emotional distress; and damages suffered from the malicious injury to a pet claim. Also, still at issue are any emotional distress damages recoverable under Plaintiff's §1983 excessive force claims. Damages for psychological harm are generally available under 42 U.S.C. §1983. *See Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (1985).

Though Plaintiff argues extensively about recovery under different theories in his response to Defendant's motion, neither party has moved for summary judgment on the issue of damages on the remaining claims. Irrespective, the issue of damages will have to be decided by the jury based upon properly worded instructions defining the allowable damages.

**D. Plaintiff's Motion to Strike (ECF No. 121)**

Plaintiff moves to strike three portions of Defendant's Reply to Plaintiff's Opposition to Defendant's Second Motion for Summary Judgment (ECF No. 116). The Court addresses each in turn.

1. The portion of footnote 1 asserting that the dog Slyder was "part pit bull," citing ECF No. 42.

1   Plaintiff argues that this reference is an attempt to "prejudice the court and

2   jury into believing that Slyder was 'pit bull.'" ECF No. 121 at 2. Plaintiff contends

3   that Defendant lacks personal knowledge of Slyder's breed composition, and that

4   any reference to Slyder's breed is hearsay. The Court, however, does not rely on

5   any reference to Slyder's breed in considering the motions before it; accordingly,

6   Plaintiff's motion to strike is denied as moot.

7      2.  Footnote 15, stating "Simply type 'for sale, pitbull mix breed' in Google and

8          you will get over 17,000, its and an endless list of mixbreed pitbulls for sale

9          in a variety of prices."

10   Plaintiff here again contends that Slyder's breed is inadmissible. Again, the

11   Court notes that it does not rely on any reference to Slyder's breed in considering

12   the motions before it, and therefore denies this motion as moot.

13      3.  Defendant's citation to the unpublished decision *Bakay v. Yarnes*, 2005 WL

14          1677966 (W.D. Wash. 2005) as precedent, arguing that it violates Local

15          Rule. 7.1(f)(2) and Fed. R. App. P. 32.1(a)(ii).

16   Again, here the Court does not rely on *Bakay* and accordingly denies

17   Plaintiff's motion as moot, but does note that unpublished cases may now be cited

18   for persuasive, but not binding authority.

19   ///

20   ///

**IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Partial Summary Judgment on Affirmative Defense RCW 4.24.410 (ECF No. 105) is **GRANTED**.

2.  Plaintiff's Motion for Partial Summary Judgment on Affirmative Defense RCW 16.08.030 (ECF No. 106) is **GRANTED**.

3.  Defendants Grant County and Deputy Lamens' Second Summary Judgment Motion Regarding State Claims (ECF No. 107) is **DENIED** in part and **GRANTED** in part.

    a.  Defendant's motion for summary judgment on the issue of Statutory Immunity under RCW 4.24.410 is **DENIED**.

    b.  Defendant's motion for summary judgment on the issue of malicious injury to a pet is **DENIED**.

    c.  Defendant's motion for summary judgment on the issue of Reckless Infliction of Emotional Distress is **DENIED**.

    d.  Defendant's motion for summary judgment on the issue of Plaintiff's negligence-based claims is **GRANTED**.

    e.  Defendant's motion for summary judgment on the issue of assault is **DENIED**.

    f.  Defendant's motion for summary judgment on the issue of conversion and destruction of property is **DENIED**.

4. Plaintiff's Motion to Strike (ECF No. 121) is **DENIED** as moot.

5. Plaintiff's Motion to Expedite (ECF No. 120) is **GRANTED.**

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** February 10, 2014.



THOMAS O. RICE
United States District Judge